UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

ADE BROWN,

                Plaintiff,

v.

UNKNOWN LEWIS et al.,

                Defendants.

_____/

Case No. 1:18-cv-347

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

I.     Factual allegations

Plaintiff Ade Brown is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia County, Michigan, where the events giving rise to the complaint occurred. Plaintiff sues the following MDOC employees

at ICF: Grievance Coordinator (unknown) Lewis; Warden Willie Smith; Deputy Warden John Christiansen; and Deputy Warden (unknown) Schiebner.

Plaintiff alleges that he transferred from another prison to ICF in March 2016, and that staff immediately harassed him due to his "previous history" at the other prison. (Compl., ECF No. 1, PageID.3.) He alleges that he was assaulted, and that officers destroyed his property, gave him a bad mattress, and deprived him of food trays for a period of time. He filed a number of grievances about these incidents.

On June 1, 2016, prison officials allegedly placed Plaintiff in restraints and denied him medical treatment for fourteen hours. He filed two grievances about this incident the following day, one of which indicated that he intended to file a lawsuit. He never received a response to these grievances or a receipt indicating that they were received.

On June 8, Plaintiff received a notice from Grievance Coordinator Lewis and Warden Smith that his "modified access" to the grievance process, which was put into place at his previous facility, was being extended for 90 days, starting May 19.[1] One consequence of being on modified grievances access is that a prisoner wishing to file a grievance must request a grievance form from the grievance coordinator, who decides whether the issue being raised is grievable. MDOC Policy Directive 03.02.130 ¶ KK (effective July 9, 2007). If the issue is not grievable, no form is provided. *Id.* Plaintiff alleges that Defendant Lewis "almost never" responded to his requests. (*Id.*, PageID.5.)

---

[1] A prisoner on modified access to the grievance process can obtain grievance forms only through the grievance coordinator, who will provide the form only if he/she determines that the issue the prisoner wishes to grieve is "grievable" and otherwise meets the grievance criteria. MDOC Policy Directive 03.02.130 ¶ KK (effective July 9, 2007), available at https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf. If a prisoner on modified access attempts to file a grievance on a form not provided by the grievance coordinator, the grievance coordinator may reject the grievance. *Id.*

Plaintiff initially thought that his June 8 grievance about the incident on June 1 had been received and was processed by Grievance Coordinator Lewis. Plaintiff thought that the notice of modified access was triggered by that grievance, because the notice listed several new grievance numbers that Plaintiff had not seen before. He sent a kite asking Lewis to explain what the grievances the numbers were referring to. She did not respond. When Plaintiff realized that he might not receive a response to the grievance, he attempted to re-file it on June 21. It was rejected at step I of the grievance process because he did not request the grievance form from Lewis. He submitted a handwritten appeal for steps II and III, but his appeal was rejected at step III because it was untimely.

Plaintiff subsequently filed several grievances without properly requesting forms from the grievance coordinator, so Defendants Lewis and Smith extended his modified access to the grievance process until April 2017.

In March 2017, Plaintiff sent "many" kites to Defendant Lewis, asking for grievance forms. (*Id.*, PageID.6.) Defendants Lewis and Smith allegedly retaliated by extending his modified access for another 120 days.

In April 2017, Plaintiff asked for more forms to file grievances about the extension of his modified access and about his medical care, but he never received a response.

Thereafter, Plaintiff filed more grievances and more grievance requests, but he did not receive a response to his requests, and his grievances were rejected because he did not receive the grievance forms from the Grievance Coordinator. In addition, Defendants Lewis, Schiebner, and Christiansen extended his modified access to the grievance process several more times. He eventually gave up on attempting to file grievances, and his modified access to the grievance process finally ended in November 2017.

Plaintiff brought a lawsuit in the Western District of Michigan concerning the incident that occurred on June 1, 2016. *See Brown v. Smith et al.*, No. 1:17-cv-282 (W.D. Mich.). The Court dismissed his claim against the defendants involved in that incident because he failed to exhaust his administrative remedies regarding that incident. (Order, No. 1:17-cv-282 (W.D. Mich.), ECF No. 46.)

Based on the foregoing, Plaintiff claims that Defendants have retaliated against him, deprived him of due process, denied him access to the courts, and violated his rights under the Eighth Amendment.

As relief, Plaintiff seeks nominal, compensatory, and punitive damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A. Retaliation

Plaintiff alleges that Defendants retaliated against him for filing grievances and for threatening to file a lawsuit by placing him on modified access to the grievance process, or by extending the duration of his modified access.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff fails to state a retaliation claim because he does not allege an adverse action. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g., Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005). It does not deter a person from filing grievances; it merely restricts the manner in which they can do so.

### B. Due Process

Plaintiff contends that Defendants deprived him of due process by placing him on modified access to the grievance process without advance notice. He learned that the duration of his modified access had been extended several weeks after the fact. This claim fails because "'there is no constitutionally protected due process right to unfettered access to prison grievance procedures.'" *Alexander*, 2017 WL 7050641, at *3 (quoting *Walker*, 128 F. App'x at 445); *accord Kirkendall v. Jaramillo*, No. 16-1500, 2016 WL 11005056, at *2 (6th Cir. Dec. 9, 2016); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003). Thus, when placing Plaintiff on modified access, Defendants did not deprive Plaintiff of a right to which due process applies.

### C. Access to the Courts

Plaintiff also contends that Defendants denied him access to the courts by placing him on modified access to the grievance process and by refusing to respond to his grievance requests. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states

must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Generally, a prison official's interference with the grievance process does not hinder a prisoner's ability to access the courts. The exhaustion requirement of 42 U.S.C. § 1997e(a) only mandates exhaustion of *available* administrative remedies. If Defendants improperly denied Plaintiff access to the grievance process, then the process was rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not

available, and exhaustion is not required); *accord Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

Plaintiff asserts that Defendants have interfered with his access to the grievance process in multiple instances and have, thereby, prevented him from pursuing a number of different claims in court. Only one of those claims merits further discussion—the one involving the incident on June 1, 2016—because Plaintiff alleges that it was dismissed by a court for failure to exhaust. With respect to any other claim that Plaintiff has been unable to exhaust, he has not suffered actual injury because, if Defendants rendered the grievance process unavailable, he is not required to satisfy the exhaustion requirement in § 1997e.

As to the incident on June 1, 2016, Plaintiff alleges that he filed a grievance but he never received a response from the grievance coordinator. He attempted to re-write the grievance on June 21, 2016, but his grievance was rejected at step I because he did not use a form provided by the grievance coordinator. He submitted a handwritten appeal at steps II and III, but his appeal was rejected at step III because it was untimely. When he filed a lawsuit about the incident, the court dismissed the claim because he did not properly exhaust it through step III of the grievance process.

The dismissal of a claim by a court is a cognizable injury, but Plaintiff fails to state a claim against Defendants because he does not allege that they caused that injury. According to Plaintiff, and according to the record in Case No. 1:17-cv-282, Plaintiff's claim was dismissed because he failed to properly exhaust it through all three steps of the grievance process. According to the Step III grievance decision, Plaintiff "did not file a complete appeal . . . within 10 business days of receiving the Step II decision or within 10 business days of when it should have been received as required by PD 03.02.130[.]" (Case No. 1:17-cv-282 (W.D. Mich.), ECF Nos. 22-3,

PageID.205.) Plaintiff does not allege that any facts indicating that Defendants are responsible for his inability to file a timely appeal.

Plaintiff alleges that the grievance coordinator did not respond to his grievance at step I of the grievance process, but this lack of response could not have prevented Plaintiff from exhausting his grievance. The grievance policy allows a prisoner to continue the grievance process even when no response has been received. The prisoner must submit his grievance to the next step in the grievance process within ten business days after the response deadline expired. MDOC Policy Directive 03.02.130 ¶¶ T, FF. Thus, the grievance coordinator's failure to respond did not cause Plaintiff's failure to exhaust his claim. Accordingly, there is no basis for Plaintiff to assert that any of the Defendants caused actual injury to his legal claim.

The court's decision in Case No. 1:17-cv-282 supports the dismissal of Plaintiff's access-to-the-courts claim. Because the court determined that Plaintiff failed to exhaust the grievance process that was available to him, Plaintiff cannot complain that Defendants are responsible for the dismissal of his claim. Plaintiff objects to the reasoning in that decision, but this is not the proper forum for relitigating that issue. Moreover, none of Plaintiff's objections address the critical fact that he did not file a timely appeal at step III. Accordingly, Plaintiff fails to state a claim because he is the one ultimately responsible for the fact that his claim was dismissed, not Defendants.

In summary, Plaintiff's claim fails because has not alleged actual injury to any of his legal claims as a result of Defendants' actions.

### D. Eighth Amendment

Plaintiff claims that Defendants' conduct violated the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those

convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). This includes deprivations that result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

Plaintiff does not contend that Defendants inflicted pain on him, deprived him of essentials like food and medical care, or subjected him to intolerable conditions of confinement. Thus, he does not state an Eighth Amendment claim.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless

Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).

If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   September 19, 2018              /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          United States District Judge